Glen **AHRENDSEN** for Lydia **AHRENDSEN** and William **Ahrendsen, Appellant,**

v.

**IOWA DEPARTMENT OF HUMAN SERVICES, Appellee.**

No. 99–0092.

Supreme Court of Iowa.

July 6, 2000.

Robert T. Gaffney of Bunz & Gaffney, Manning, for appellant.

Thomas J. Miller, Attorney General, and Daniel W. Hart, Assistant Attorney General, for appellee.

CARTER, Justice.

Glen Ahrendsen, who filed an application for Medicaid benefits on behalf of his mother and deceased father, appeals from a district court decision upholding a regulation of the Iowa Department of Human Services (DHS) that limits retroactive payment of Medicaid benefits to a period of three months prior to the most recent application. After reviewing the record and considering the arguments presented, we affirm the judgment of the district court.

Glen Ahrendsen is the son of Lydia and William Ahrendsen. In August 1991 William and Lydia transferred 160 acres of farmland worth approximately $240,000 to Glen and his sister for a consideration of two dollars. Their attorney advised them at this time that this transfer would render them ineligible for Medicaid benefits for an unspecified period of time.

William and Lydia subsequently entered a nursing home in January 1992. In September 1992, upon the request of a social worker at the nursing home, Glen filed an application for Medicaid benefits for his parents with the Audubon County office of DHS. DHS is the administrator of the federal Medicaid program in Iowa. On September 30, 1992, DHS issued a decision denying the Ahrendsens' application. The decision indicated that they would be ineligible for Medicaid payments until August 1997. This statement was not correct. The correct period of ineligibility was until February 1994.

DHS had a policy allowing new applications for Medicaid benefits to be filed during a previously determined period of ineligibility. When such applications were filed, the previously determined ineligibility was reviewed anew. In September 1996 Glen filed a new application for his mother, Lydia, and also sought to obtain retroactive benefits for his father, who had

died in July 1994. The application was approved for Lydia only with retroactive payments to June 1, 1996. Glen then requested an extended period of retroactivity based on the fact that the agency had given incorrect information concerning the period of ineligibility in its consideration of the Ahrendsen September 1992 application. This request was denied on the basis that a federal statute and administrative regulations of DHS only permit retroactive payment of benefits for a period of three months.

Ahrendsen filed a petition for judicial review. The district court affirmed the agency decision, and this appeal followed.

## I. *Standard of Review.*

Iowa Code section 17A.19(8) (1999) governs this court's review of appeals from administrative actions. On review of agency actions, this court functions solely in an appellate capacity to correct errors of law on the part of the agency. *Glowacki v. State Bd. of Med. Exam'rs,* 516 N.W.2d 881, 884 (Iowa 1994). An appeal of a district court decision is governed by Iowa Code section 17A.20. The scope of review under this section is limited to determining whether the district court correctly applied the law in exercising its section 17A.19(8) judicial review function. *Id.* This court's review is limited to questions considered by the agency. *Office of Consumer Advocate v. Iowa State Commerce Comm'n,* 465 N.W.2d 280, 283 (Iowa 1991).

## II. *Standards for Medicaid Eligibility.*

Medicaid is a cooperative federal and state welfare program in which the federal government provides financial assistance to states so that they can furnish medical care to certain needy individuals and families. *See* 42 U.S.C. § 1396. Although participation in the program is voluntary, participating states must comply with certain requirements imposed by the federal Medicaid statute and with federal regulations

promulgated by the Secretary of the Department of Health and Human Services, who administers the program at the federal level.

To qualify for federal assistance, a state must obtain the Secretary's approval of a "plan for medical assistance." 42 U.S.C. § 1396a(a); Grants to States for Medical Assistance Programs, 42 C.F.R. § 430.10 (1999). Iowa participates in the Medicaid program pursuant to a state plan approved by the Secretary. The federal Medicaid statute and regulations that the state must follow impose financial limits on Medicaid eligibility and require states to impose a period of ineligibility for Medicaid benefits on individuals who transfer assets for less than fair market value in order to qualify for Medicaid. *See* 42 U.S.C. §§ 1396a(a)(10), 1396a(a)(17), 1396b(f), 1396p(c). The crux of this case is the mistake made by the department in 1992 regarding the period of ineligibility resulting from the transfer of assets from the Ahrendsens to their children. At that time, the Iowa Medicaid program had two different policies on transfers of assets, depending on when the transfer was made. Iowa's original policy on transfers of assets was promulgated in 1982 and provided for periods of ineligibility from twenty-four to seventy-two months, depending on the amount transferred to qualify for Medicaid benefits. IV Iowa Admin. Bull. 1060 (Feb. 17, 1982) (codified at Iowa Admin. Code r. 770—75.6, rescinded Feb. 1, 1999).

In the Medicare Catastrophic Coverage Act of 1988, Congress mandated a uniform national policy on transfers made after July 1, 1989, with a maximum ineligibility period of thirty months. Medicare Catastrophic Coverage Act of 1988, Pub.L. No. 100–360, § 303(b), 102 Stat. 683, 760–61 (1988) (codified as amended at 42 U.S.C. § 1396p(c)). DHS subsequently published new rules on June 28, 1989, for transfers made after July 1, 1989, with a maximum ineligibility period of thirty months. XI Iowa Admin. Bull. 2229 (June 28, 1989) (codified at Iowa Admin. Code r. 441—

75.15, rescinded Feb. 1, 1999). The department, however, retained the old rules for transfers made prior to July 1, 1989. XI Iowa Admin. Bull. 2229, 2231 (June 28, 1989) (amending Iowa Admin. Code r. 441—75.6, rescinded Feb. 1, 1999).[1] The Ahrendsens' transfer was made in August 1991 and an application for Medicaid benefits was filed in September 1992. Because the transfer was made after July 1, 1989, the correct period of ineligibility was thirty months.

Lydia's September 1996 application for Medicaid benefits was approved effective June 1, 1996, which was three months prior to the month in which the application was submitted. That was the maximum period for retroactive payment permitted by federal statute and state regulation. The federal Medicaid statute provides:

> A State plan for medical assistance must—
>
> . . . .
>
> (34) provide that in the case of any individual who has been determined to be eligible for medical assistance under the plan, such *assistance will be made available* to him *for care and services* included under the plan and *furnished in or after the third month before the month in which he made application* (or application was made on his behalf in the case of a deceased individual) for such assistance if such individual was (or upon application would have been) eligible for such assistance at the time such care and services were furnished.

42 U.S.C. § 1396a(a)(34) (emphasis added). Iowa administrative rules governing the effective date of Medicaid benefits in Iowa track with the federal statute:

76.5(1) *Three-month retroactive eligibility.*

*a.* Medical assistance benefits shall be available for all or any of the three months preceding the month in which the application is filed to persons who meet both of the following conditions:

(1) Have medical bills for covered services which were received during the three-month retroactive period.

(2) Would have been eligible for medical assistance benefits in the month services were received, if application for medical assistance had been made in that month.

Iowa Admin. Code r. 441—76.5(1)(a).

In seeking relief from the agency decision, the Ahrendsens advance three theories: (1) that the September 1996 application should be considered to be a timely appeal of the agency's ruling on the September 1992 application, (2) that the agency is estopped to assert its limit on retroactive benefits by reason of having misinformed the Ahrendsens of their rights, and (3) that the denial of retroactive benefits for the full period of eligibility would result in unjust enrichment. We separately consider these contentions.

■ A. *Consideration of the September 1996 application as an appeal of the agency's ruling on the September 1992 application.* The Ahrendsens argue that the application filed for Lydia in September 1996 and the subsequent proceedings before the department should be treated as a timely appeal of the period of ineligibility given in September 1992. More particularly, they argue that at common law a cause of action does not arise until the

---

**1.** Congress substantially amended the federally mandated policy on transfers of assets in 1993, resulting in a third policy, applicable to transfers made after August 10, 1993, that has no maximum period of ineligibility. *See* Omnibus Budget Reconciliation Act of 1993, Pub.L. No. 103–66, § 13611, 107 Stat. 312, 622 (1993) (amending 42 U.S.C. § 1396p(c)). DHS adopted state administrative rules implementing this policy effective February 9, 1994. XVI Iowa Admin. Bull. 1468–69 (Jan. 5, 1994) (codified at Iowa Admin. Code r. 441—75.23). Effective February 1, 1999, the state administrative rules on transfers made on or before August 10, 1993, were rescinded as no longer affecting current Medicaid applicants or recipients. XXI Iowa Admin. Bull. 1090–91 (Dec. 2, 1998) (rescinding Iowa Admin. Code r. 441—75.6 & 75.15).

injury occurs. Moreover, they claim that due to the error made by the department, the "cause of action" did not accrue until discovery of the mistake in September 1996. *See* Iowa Code § 614.4 (in actions for relief on ground of mistake, cause of action shall not be deemed to have accrued until mistake is discovered by aggrieved party). Finally, they urge that Medicaid benefits are property rights enforceable under 42 U.S.C. § 1983, and the two-year statute of limitations applicable in § 1983 actions does not begin to run until the plaintiff knows or has reason to know of the injury that is the basis of the § 1983 action.

This argument by the Ahrendsens must fail for several reasons. First, as we observed in *Vachon v. State*, 514 N.W.2d 442 (Iowa 1994):

> [K]nowledge of the facts and knowledge that they are actionable are distinct and unrelated issues for the purposes of the discovery rule....
>
> There is no suggestion in any of the leading cases in this area that accrual of the cause of action is postponed until plaintiff learns or should learn the state of the law positing a right of recovery upon the facts already known to or reasonably knowable by the plaintiff.

*Vachon,* 514 N.W.2d at 446.

■ More to the point, we are convinced that the concept of an enlargement of the time for commencing legal proceedings until the basis of the claim is discovered is not applicable to a situation in which a claim has already been presented and ruled on by an adjudicative tribunal. In such a situation, the claimant faced with a decision of the tribunal has a choice of accepting it or challenging it within the time provided by law.

Nor are we convinced that a belated appeal of the decision on the September 1992 application could, by itself, bring the Ahrendsens the relief they are seeking. The issue on the September 1992 application was the Ahrendsens' eligibility at that time. The decision correctly determined that such eligibility did not exist. Although an appeal might have enlightened them as to the correct duration of the period of ineligibility, it would not have formed the basis for granting them the relief that they now seek. It is implicit in the statute and regulations that such relief could only have been obtained by filing a new application no later than three months following their attaining eligibility.

■ B. *The estoppel claim.* The Ahrendsens assert that DHS should be estopped from denying their claim for Medicaid benefits throughout their full period of eligibility. We disagree. As we observed in *S & M Finance Co. v. Iowa State Tax Commission,* 162 N.W.2d 505 (Iowa 1968), "[e]quitable estoppel is based on the idea that one who has made certain representations should not thereafter be permitted to change his position to the prejudice of one who has relied thereon." *S & M Fin. Co.,* 162 N.W.2d at 510. The Ahrendsens' failure to obtain Medicaid benefits at an earlier date has not come about from any change of position on the part of DHS. Consequently, an essential element of an estoppel claim is lacking.

Because the present case involves the administration of a federal program and the period of retroactivity is fixed by a federal statute, federal decisions on estoppel claims based on misadvice to a claimant are instructive. In *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), a claimant had met with a field representative of the Social Security Administration and inquired as to her eligibility for "mother's insurance" benefits. The representative told her incorrectly that she was not eligible. As in the present case, the claimant later discovered that the representative was wrong and that she would have been eligible for benefits had she filed an application. In rejecting a claim of estoppel similar to the one being urged by the Ahrendsens, the Supreme Court held that the agency was not estopped from denying benefits for the

period prior to the time that the claimant's belated application was made. *Schweiker*, 450 U.S. at 790, 101 S.Ct. at 1472, 67 L.Ed.2d at 690. We conclude that the Ahrendsens may not prevail on their estoppel claim.

■ C. *The unjust enrichment theory.* The Ahrendsens' final claim is that, if we do not grant them benefits for the entire period for which they were eligible, the State will be unjustly enriched. We find no merit in this contention. In *Dolezal v. City of Cedar Rapids*, 326 N.W.2d 355, 357–58 (Iowa 1982), this court approved a recovery for unjust enrichment against a municipal corporation under a theory of quasi-contract. We concluded that an unjust-enrichment claim arises from the equitable principle that one shall not be permitted to unjustly enrich oneself by receiving property or benefits without making compensation therefor. In so concluding, we applied the standard contained in Restatement of Restitution, Introductory Note, at 522–25 (1937). We are convinced that neither DHS nor the State of Iowa was unjustly enriched by denying an application for Medicaid benefits on a ground that was consistent with federal statutory law and the DHS regulations.

We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**

All justices concur except NEUMAN, J., who takes no part.